**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOSHUA HAENTGES, D.D.S. AND
ELKLAND FAMILY DENTISRY, PLLC

        *Plaintiffs,*

    v.

BRICE D. ARNDT, D.D.S.,
SHAWN CASEY, D.M.D.,
GODFREY J. FUNARI, M.S., D.M.D.,
JOEL JASPAN, D.D.S.,
R. IVAN LUGO, D.M.D.,
ANDREW MATTA, D.M.D.,
LAJUAN MOUNTAIN, D.M.D.,
DONNA L. MURRAY, R.D.H.,
JENNIFER SULLIVAN, D.M.D., J.D.,
BARBARA FOLWER,
ARION R. CLAGGETT,
MOLLY POHLHAUS,
BRIAN WYANT, each individually and
in their official capacities as Officers and/or
Members of the Pennsylvania State Board
of Dentistry; and DOES 1-10, inclusive,

        *Defendants.*

_____/

CIVIL CASE NO.


**JURY TRIAL REQUESTED**


## COMPLAINT

Plaintiffs, Joshua Haentges, D.D.S. ("Dr. Haentges" and/or "Plaintiff") and Elkland Family

Dentistry, PLLC ("EFD" and/or "Plaintiff"), by and through undersigned counsel, Bochetto &

Lentz, P.C., brings this action against Defendants, Pennsylvania State Board of Dentistry, Brice

D. Arndt, D.D.S., Shawn Casey, D.M.D., Godfrey J. Funari, M.S., D.M.D., Joel Jaspan, D.D.S.,

Andrew Matta, D.M.D., LaJuan Mountain, D.M.D., Donna L. Murray, R.D.H., Jennifer Sullivan,

D.M.D., J.D., Joyce Warwick, D.M.D., Barbara Folwer, Arion R. Claggett, Molly Pohlhaus, Brian Wyant, and in support thereof avers as follows:

## PARTIES

1.      Plaintiff, Joshua Haentges, D.D.S. ("Dr. Haentges") is an adult individual and a citizen of the United States who is a resident of the State of New York.  Dr. Haentges is a licensed dentist in the State of New York, and more recently, received his license in Pennsylvania "by endorsement."

2.      Plaintiff, Elkland Family Dentistry, PLLC ("EFD") is a Pennsylvania professional limited liability company with a principal place of business located at 223 W. Main Street, Elkland, PA 16920.  Dr. Haentges is the sole owning member of EFD.

3.      Defendant, Brice D. Arndt, D.D.S.  ("Arndt") is an adult individual and a citizen of the United States who has a business address and can be served at 83 Greenwood Circle, Wormleysburg, PA 17043.  Arndt is a practicing dentist in Pennsylvania.  He is currently and has been a member of the Pennsylvania Board of Dentistry ("Board") since June 8, 2020.

4.      Defendant, Shawn Casey, D.M.D. ("Casey") is an adult individual and a citizen of the United States who has a business address and can be served at Casey Dental Institute, 1073 Oak St, Pittston Twp, PA 18640.  Casey is a practicing dentist in Pennsylvania.  He currently is and has been a member of the Board since before 2020.

5.      Defendant, Godfrey J. Funari, M.S., D.M.D. ("Funari") is an adult individual and a citizen of the United States who has a business address and can be served at Jefferson Oral Surgery Associates, 135 South Bryn Mawr Avenue, Suite 108, Bryn Mawr, PA 19010.  Funari is a practicing dentist in Pennsylvania.  He was a member of the Board at times material hereto from October 17, 2018 until October 17, 2024.

2

6.     Defendant, Joel Jaspan, D.D.S. ("Jaspan") is an adult individual and a citizen of the United States who has a business address and can be served at Plymouth Valley Periodontal Associates, 832 Germantown Pike Ste 2, Plymouth Meeting, PA, 19462.  Jaspan is a practicing dentist in Pennsylvania.  He is currently and has been a member of the Board since June 8, 2020.

7.     Defendant, R. Ivan Lugo, D.M.D. ("Lugo") is an adult individual and a citizen of the United States who has an address and can be served at 1 Mercier Lane, Edgartown, MA 02539-8547.  Lugo was a practicing dentist in Pennsylvania at material times hereto.  He was at material times hereto a member of the Board, having been appointed in 2017, and served as Chairperson of the Board at material times hereto.

8.     Defendant, Andrew Matta, D.M.D. ("Matta") is an adult individual and a citizen of the United States who has a business address and can be served at Refresh Dental, 2623 Wilmington Rd, New Castle, PA 16105.  Matta is a practicing dentist in Pennsylvania.  He currently is and has been a member of the Board since before 2020.

9.     Defendant, LaJuan Mountain, D.M.D. ("LaJuan") is an adult individual and a citizen of the United States who has a business address and can be served at 116 S George St, York, PA 17401.  LaJuan is a practicing dentist in Pennsylvania.  She is currently and has been a member of the Board since March 18, 2019.

10.    Defendant, Donna L. Murray, R.D.H. ("Murray") is an adult individual and a citizen of the United States who has a business address and can be served at 507 Fishing Creek Rd, Lewisberry, PA 17339.  Murray is a practicing dental hygienist in Pennsylvania.  She is currently and has been a member of the Board since 2018.

11.    Defendant, Jennifer Sullivan, D.M.D., J.D. ("Sullivan") is an adult individual and a citizen of the United States who has a business address and can be served at 2072 Brodhead Rd,

Aliquippa, PA 15001.   Sullivan is a practicing dentist in Pennsylvania.   She is the current Chairperson of the Board and has been a member since 2020.

12.    Defendant, Barbara Fowler ("Fowler") is an adult individual and a citizen of the United States who resides at 245 Conway Street, Carlisle, PA 17013-3602.   Fowler is a current public member of the Pennsylvania Board and has been since 2015.

13.    Defendant, Arion R. Claggett ("Claggett") is an adult individual and a citizen of the United States who can be served at the Bureau of Professional and Occupational Affairs, 2601 N. 3rd St., Harrisburg, PA 17110.   Claggett is the Acting Commissioner of the Bureau of Professional and Occupational Affairs.   He is currently a member of the Board and was a member of the Board during relevant times hereto.

14.    Defendant, Molly Pohlhaus ("Pohlhaus") is an adult individual and a citizen of the United States who is a Pennsylvania Deputy Attorney General, who can be served at the Office of Attorney General, 16th Floor, Strawberry Square, Harrisburg, PA 17120.   Pohlhaus is a member of the Pennsylvania Board and has been at material times hereto.

15.    Defendant, Brian Wyant ("Wyant") is an adult individual and a citizen of the United States who is the Designee member of the Pennsylvania Board by the Secretary of Health and can be served at the Pennsylvania Department of Health, Health & Welfare Building, 625 Forester Street, Harrisburg, PA 17120.   Wyant is a member of the Pennsylvania Board and has been at material times hereto.

16.    Does 1-10 are yet unknown coconspirators of the Defendants.

4

## JURISDICTION AND VENUE

17.    This Court has federal question subject matter jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. §1331 and §1337 because those claims arise under the laws of the United States, the Federal Sherman Antitrust Act (15 U.S.C. §1, *et seq*.).

18.    This Court has general personal jurisdiction over the Defendants because, upon information and belief, each of them resides in Pennsylvania, subjecting each individual defendant to the general personal jurisdiction of Pennsylvania courts, including this Court. *Milliken v. Meyer*, 311 U.S. 457, 462-63 (1940).

19.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are all residents of Pennsylvania, and several of the Defendants reside in this Judicial District.  Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District insofar as the Defendants making up the Board met, agreed and conspired in or around Harrisburg, Pennsylvania, located in this Judicial District.

## FACTUAL BACKGROUND

20.    Dr. Haentges obtained his New York dental license and began practicing dentistry in 2017.

21.    In late 2020 to early 2021, Dr. Haentges purchased two dental offices from a retiring dentist, one in Watkins Glen, New York ("Watkins Office") and the other in Elkland, Pennsylvania ("Elkland Office").

22.    Watkins Glen, New York is approximately 45 miles and a 50-minute drive from Ekland, Pennsylvania, which is situated at the New York-Pennsylvania border:



23.     After purchasing the two dental offices, Dr. Haentges began his practice at the

Watkins Office and filed an application with the Pennsylvania State Board of Dentistry for

licensure by endorsement in Pennsylvania.

24.     Dr. Haentges required a Pennsylvania license to be able to practice in the Elkland

Office, which is owned by EFD.

25.     A licensure by endorsement is defined by Pennsylvania statute, 63 Pa.C.S. §

3111(a)(1) (hereinafter referred to as "Section 3111(a)").  Section 3111(a) allows for licensure of

certain out-of-state professionals, including dentists.

26.     Section 3111(a) was enacted by the Pennsylvania legislature in 2019 as part of

"Act 41," the purpose of which was to streamline admission of foreign professionals to

Pennsylvania practice, due to a recognition that licensed professionals from other jurisdictions

have difficulty obtaining a license to practice in the Commonwealth of Pennsylvania.

27.     Section 3111(a) was intended to eliminate unnecessary barriers to licensure for

citizens from other jurisdictions and for military personnel and their spouses while maintaining

sufficient safeguards to ensure public protection.  By allowing licensure by endorsement, as well

as provisional endorsement license, Section 3111(a) mandates boards move these professionals into the workforce without unnecessary delays, which reduces the barriers to employment.

28.    Generally, licensure by endorsement under Section 3111(a) requires that (1) the applicant hold a current license from another state, territory or country, and (2) the licensing board/commission determines that that state's, territory's or country's requirements are "substantially equivalent to or exceed the requirements established" in the Commonwealth of Pennsylvania.

29.    Dr. Haentges applied for his Pennsylvania dental license by endorsement pursuant to Section 3111(a) on May 4, 2021.

30.    On July 27, 2021, the Pennsylvania Board provisionally denied his application, when the Board "found New York's dental licensing requirements were not substantially equivalent to Pennsylvania's requirements because New York did not require dental applicants to pass a clinical examination."

31.    Pennsylvania requires dental applicants to sit for and pass the ADEX examination, a nationally administered examination by the American Board of Dental Examiners.

32.    Dr. Haentges appealed this finding by the Board, noting in his appeal that, while New York did not require its applicants to pass a dental clinical examination, it did require the successful completion of a clinically-based postdoctoral general practice or specialty dental residency program, of at least one year's duration, as well as a formal outcome assessment evaluation of the resident's competence to practice dentistry, which, collectively, Dr. Haentges asserted was at least substantially equivalent to a clinical examination.

33.     Dr. Haentges further asserted that though New York law requires residents to perform a specific list of procedures (resulting in 9 total procedures), Dr. Haentges not only met the requirements but actually completed a total of 250 procedures, a number well over the minimum required.

34.     Dr. Haentges further argued the superiority of a 1-year residency practicing on live patients in comparison to a 2-to-3-day course on manikins, which was what the ADEX examination consisted of.

35.     The Boad appointed a hearing officer.  An evidentiary hearing was held on October 4, 2021, at which the evidence offered was:

- New York law requires residents to perform a specific list of procedures, including two full crowns; two endodontically treated teeth; four restorations, meaning two anterior, two posterior; and one periodontal case.

- Dr. Haentges, during his New York-required one-year residency, performed 21 crown preparations, 14 endodontic procedures, 197 restorations, and 18 periodontal cases, on live patients.

- Pennsylvania's required ADEX examination involves only three crown preparations, two restorations, one complete root canal, and one partial root canal over two or three days on manikins, rather than New York's one-year residency on live patients.

36.     At the evidentiary hearing, Dr. Haentges also testified that he would be at a severe disadvantage competing against dental students for seats at the Pennsylvania-required ADEX examination, where only one-sixth of ADEX examinations locations had room for anyone other than dental students to even get on a wait list.

37.     On December 20, 2021, the hearing examiner issued an order granting licensure by endorsement to Dr. Haentges, finding the New York requirements "equaled or exceeded" those of Pennsylvania.

38.     Despite the evidence presented, and despite the hearing officer's recommended decision to grant the license by endorsement, the Board reversed on March 16, 2022, again repeating, without evidentiary basis, that "New York's written examination and residency were not substantially equivalent to, and did not exceed, Pennsylvania's written and dental clinical examinations."

39.     There was no credible evidentiary basis for the Board's decision to reverse the hearing officer's decision.

40.     Dr. Haentges appealed to the Commonwealth Court, which reversed the Board on December 21, 2023, *Haentges v. State Board of Dentistry*, 307 A.3d 823, 834 (Pa. Cmwlth. 2023).[1]

41.     The Commonwealth Court found that, while The Dental Law, 63 Pa. Stat. Ann. § 122(c), delegates to the Board power to issue licenses "after examination," determining generally the subject and scope of same – *id.* at 830; 49 Pa. Code § 33.103—the relevant law for a reciprocal license, such as that sought by Dr. Haentges, was Section 3111(a).

42.     The Commonwealth Court further found that the only contested requirement of that statute in Dr. Haentges' case was whether New York's requirements for licensure as a dentist "are substantially equivalent to or exceed the requirements established in" Pennsylvania. *Haentges*, 307 A.3d at 830.

43.     The Commonwealth Court found that Section 3111(a) has the "goal of helping qualified professionals from other states obtain licensure in Pennsylvania," and that the Board's application of the statute was inconsistent with that goal.  *Id.* at 831.

---

[1] A copy of the Commonwealth Court's *Haentges* opinion is attached as Exhibit "A."

44.     After reviewing the record before the Board, the Commonwealth Court held that the Board abused its discretion by failing to apply the plain language of Section 3111(a). *Id.* at 833. It went so far as to say the following about the superiority of the New York requirements:

> New York's licensing requirements were substantially equivalent to, or exceeded, Pennsylvania's licensing requirements by any reasonable measure. Indeed, if given the choice, it is doubtful anyone would prefer to undergo a dental procedure performed by a newly licensed dentist who completed a two-day exam on a manikin over a newly licensed dentist who completed a year-long residency training and performing procedures on live patients.

*Id.* at 834.

45.     On January 14, 2024, after the Commonwealth Court found the Board abused its discretion in denying Dr. Haentges' license by endorsement, but close to three years after Dr. Haentges filed his initial application, the Board finally granted Dr. Haentges' license by endorsement under Section 3111(a).

46.     Dr. Haentges' experience as a New York licensed dentist seeking a Pennsylvania license by endorsement is not an aberration.

47.     Indeed, since Pennsylvania enacted Act 41 in 2019, the Board, upon information and belief, has denied all applicants from New York licensed dentists seeking a Pennsylvania license by endorsement, and as a basis for such denials, relied on the arbitrary and capricious grounds that New York's clinical experience requirement is not "substantially equivalent" to the ADEX clinical examination.

48.     But like Dr. Haentges, there was no legal or factual basis for the Board's denial of such applications for license by endorsement since New York's licensing requirements were not only "substantially equivalent," but exceed that of Pennsylvania's by any "reasonable measure."

49.     By way of example, on May 18, 2021, the Board issued a Final Adjudication and Order concerning an Act 41 application for licensure by endorsement of Eugene Myung Ko, D.D.S., who had been a licensed practicing dentist in New York since 2013 and held a "restricted" Pennsylvania faculty license as a professor at Penn Dental School in Philadelphia.[2]

50.     Although the hearing officer found New York's licensing requirements "substantially equivalent" to Pennsylvania's, like Dr. Haentges' case, the Board overruled the hearing officer, concluding the opposite, consistent with the Board's agreement to do so in furtherance of the goal to decrease competition from New York in Pennsylvania.

51.     Similarly, the Board denied the Act 41 application for licensure by endorsement of Sunczarae Kushkituah, D.D.S. on October 15, 2021.[3]  Dr. Kushkituah was also a New York licensed dentist, seeking a Pennsylvania license by endorsement, but the Board – consistent with the illegal, anti-competitive agreement among its members – denied the application, again falsely stating "New York's licensing requirements are not substantially equivalent to those of Pennsylvania."

52.     In or about 2021, the Board likewise denied the Act 41 application of Patrick Battista, D.D.S., also a New York licensed dentist, as well as a clinical professor at the University of Buffalo School of Dental Medicine.

53.     Dr. Battista was seeking a Pennsylvania license by endorsement to practice dentistry in Pennsylvania.  The Board, consistent with their illegal agreement to prevent competition from New York dentists, denied Dr. Battista's application, again falsely stating that New York's licensure requirements were not "substantially equivalent" to Pennsylvania's.

---

[2] A copy of the Board's Final Adjudication and Order in Dr. Ko's matter is attached as Exhibit "B."

[3] A copy of the Board's provisional denial of Dr. Kushkituah is attached as Exhibit "C."

54.     Dr. Battista appealed the Board's provisional denial, but later withdrew his application and remains a practicing dentist in New York.  This is consistent with the Board's anticompetitive goal of limiting competition from New York dentists in order to prevent new dentists from entering the market via endorsement and lowering the price of dental services in Pennsylvania.

55.     The membership of the Board is set up by statute in The Dental Law.  It is made up of 13 members, ten of which are licensed dental practitioners, including:

- Eight licensed Pennsylvania dentists;
- One licensed Pennsylvania dental hygienist; and
- One "expanded function dental assistant[.]"

63 Pa. Stat. Ann. § 121.1(a).

56.     The Board is led by a Pennsylvania licensed dentist who also is a licensed Pennsylvania attorney, Dr. Jennifer Sullivan, D.M.D., J.D.

57.     Seven other members of the Board – Defendants Arndt, Casey, Funari, Jaspan, Matta, Mountain, and Murray – are also licensed and practicing dental professionals in Pennsylvania, each of whom have an economic motive to decrease competition from out-state dentists, including New York dentists.

58.     New York and Pennsylvania share a large border, 225 miles long, stretching from Lake Erie to the Northwest corner of New Jersey:



59.    To defeat increased competition from New York dentists and prevent competition on price and quality of services with New York dentists, the Defendants, all of whom are members of the Board, entered into an illegal agreement to arbitrarily and capriciously interpret and apply Section 3111(a) so as to erect illegal and anti-competitive barriers preventing New York licensed dentist from obtaining Pennsylvania licensure.

60.    The Defendants' agreement consisted of ignoring the facts – as found by the Commonwealth Court – that New York's licensure requirements for dentists are not only "substantially equivalent" but exceed Pennsylvania's clinical examination requirement.

61.    The Defendants' agreement further consisted of ignoring the law – as found by the Commonwealth Court – that Section 3111(a) has the "goal of helping qualified professionals from other states obtain licensure in Pennsylvania," and that the Board's application of the statute was inconsistent with that goal. *Haentges*, 307 A.3d at 831.

62.    The Defendants' illegal, anti-competitive agreement to prevent New York licensed dentists from practicing dentistry in Pennsylvania has caused substantial harm, not only to Dr. Haentges, but the marketplace.

63.    The Defendants' illegal actions have had the effect of restraining competition unreasonably and injuring consumers in the following ways, among others:

    a.   Preventing and deterring New York dentists from providing dental healthcare in Pennsylvania;

    b.   Depriving consumers of the benefits of price competition; and

    c.   Reducing consumer choice in Pennsylvania for the provision of dental services, particularly in rural areas in and around the New York-Pennsylvania border, where such services are particularly needed.

64.    The Defendants' illegal actions have also caused Dr. Haentges and EFD substantial damages, including, but not limited to forcing them to unnecessarily expend significant legal fees and costs in appealing the Board's illegal decision, as well as the lost profits and opportunity in providing dental services to the Elkland Office patients for nearly three years before obtaining Dr. Haentges' Pennsylvania license.

65.    As a result of the delay in obtaining his Pennsylvania license, the value of the Elkland Office has been substantially decreased as many of the patients who were once served by that office were required to seek out alternative dentists and likely will not return for dental services.

66.    The Defendants' illegal agreement to decrease competition was not intended to protect any legitimate public interest.  Instead, the conspiracy was designed to prevent Dr. Haentges and other New York dentists from competing with the Board's own market participants and constituent dentists in Pennsylvania, which not only caused Dr. Haentges and EFD harm, but denied Pennsylvania patients access to arguably better-trained New York dentists and created a situation in which there were fewer dentists to serve Pennsylvania consumers, which would support existing price levels or even increase them.

67.     The Federal Trade Commission ("FTC") has recognized the potential for conflict between federal antitrust laws and state regulatory boards dominated by active members of their respective industries.

68.     In 2015, after the United States Supreme Court decision in *North Carolina State Board of Dental Examiners v. FTC*, 574 U.S. 494 (2015), the FTC issued guidance entitled "FTC Staff Guidance on Active Supervision of State Regulatory Boards Controlled by Market Participants."[4]

69.     That FTC Guidance makes clear the special scrutiny applied to actions by state regulatory boards controlled by market participants and laid out specific guidance relevant to restraints imposed by such boards, including, but not limited to giving non-market participant board members appointed by the state veto rights to board action.

70.     Here, the Board and its 8 members who are market participants have failed to heed the federal government's warnings or to follow in any meaningful way the FTC's guidance based on their actions toward New York licensed dentists seeking licensure by endorsement in Pennsylvania under Act 41 and Section 3111(a).

71.     The Board is fully controlled by the 8 market participant members, who together constitute a quorum and can act unilaterally without any control or supervision by the non-market participant members, who hold no veto rights to prevent the market participant board members from taking anticompetitive actions such as those taken here to impair New York licensed dentists from entering the Pennsylvania dental marketplace.

72.     There is no regulation or statute authorizing the Board to ignore the facts concerning New York's licensing requirements and that New York's requirements are clearly

---

[4] A copy of the FTC Guidance is attached as Exhibit "D."

"substantially equivalent" to Pennsylvania's.  But there is also no regulation or statute preventing the market participants on the Board from taking such anticompetitive actions.

73.    There is also no regulation or statute authorizing the Board to arbitrarily and capriciously misread and misapply Section 3111(a) and Act 41 inconsistent with its stated goals of helping out-of-state professionals obtain Pennsylvania licensure.  But there is also no regulation or statute preventing the market participants on the Board from taking such anticompetitive actions.

74.    While the Board and its members have used their offices to perpetrate their misconduct under color of state law, they in fact do not have any actual authority to utilize their offices to purposely restrict competition from out-of-state dentists.

## COUNT I

## Violations of Federal Sherman Antitrust Act

## (15 U.S.C. § 1, *et seq.*)

## (By All Plaintiffs against All Defendants)

75.    Plaintiff incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

76.    The "Relevant Market" in which to evaluate the anti-competitive effect of the conduct of the Board and the Defendant Members is the market for general dentistry in Pennsylvania, and the method of delivering that treatment to consumers.

    a)    The relevant products in this market are dental services and treatments and the methods of delivering the services and treatments to consumers.

    b)    The relevant geographic market is properly limited to Pennsylvania. Upon information and belief, consumers in Pennsylvania general dental services and

treatment from local providers in the Commonwealth, and as a result do not travel outside the Commonwealth in any appreciable numbers to obtain dental services and treatment.

c) Thus, if the price of dental services and treatment in Pennsylvania increases as a result of the illegal, conspiracy by the Board and its members – the Defendants --against Dr. Haentges and other New York licensed dentists and their practices, consumers will have to pay the higher prices for general dental services and treatment within Pennsylvania, and perhaps travel longer distances within the Commonwealth to seek such services.

77.    The majority of the Board who are dentists or orthodontists (or work in the dental industry) are actual or potential participants in the Relevant Market and have incentives to restrict competition in the Relevant Market to prevent the delivery of general dental services and the provision of such services and treatments provided by Dr. Haentges.

78.    The Board and its members, through their anti-competitive actions and omissions, knowingly formed, joined, and entered into an agreement, contract, combination, or conspiracy in restraint of trade and commerce to burden, restrict, or prevent Dr. Haentges and other New York licensed dentists from providing dental services and treatments in the Relevant Market.

79.    The Board and its members, through their anti-competitive actions and omissions, entered into an agreement, contract, combination, or conspiracy in restraint of trade and commerce to burden, restrict, or prevent Dr. Haentges and other New York licensed dentists from practicing dentistry in the Relevant Market.

80.    As is evidenced by the Board and its members' failure to take any remedial action to prevent the arbitrary and capricious conduct (and, on information and belief their acquiescence,

direction, approval, agreement, or ratification of that misconduct) the Board and its members have demonstrated a unity of purpose, as well as common design and understanding, with each other to reduce or eliminate Dr. Haentges and other New York licensed dentists' ability to provide dental services to Pennsylvania residents in the Relevant Market, as well as Dr. Haentges and other New York licensed dentists' ability to practice dentistry in the Relevant Market despite being fully qualified and credentialed to practice dentistry in Pennsylvania. This in turn reduces competition in the Relevant Market. The Board and its members possessed a conscious commitment to a common scheme designed to achieve an unlawful objective.

81.     The Board and its members enforced their output-restricting agreement by using the power and authority of their office to preclude entrance of competing providers, products, and platforms into the Relevant Market, or to restrict the method of competition in the Relevant Market.

82.     The Board and its members' actions and omissions evidence a predatory intent to deprive New York dentists of the ability to compete in the Relevant Market. Through their actions, the Board and its members intended to reduce in the Relevant Market (1) the number of dental providers in Pennsylvania; (2) the number and type of dental procedures provided to consumers; and (3) the output of such services. These actions and omissions do not enhance public health and safety in Pennsylvania and do not serve any legitimate public purpose.

83.     By engaging in an ongoing pattern of illegal, arbitrary and capricious acts as part of their monopolistic design, the Board and its members have wrongfully, unlawfully, and unfairly (1) restricted Pennsylvania consumers' access to affordable dental services and treatment (through Dr. Haentges' and other New York licensed dentists' services and treatment); (2) harmed consumers due to restricted options for such treatment; (3) stifled competition in favor of

established special interests; (4) deprived Dr. Haentges of the full value of his degrees, credentials and other business licenses to conduct business in Pennsylvania; (5) deprived Dr. Haentges of the full value of his constitutionally protected liberty and property interests; and (6) failed to protect the public in any manner.

84.    The Board and its members' actions and omissions constitute a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. On their face, the actions and omissions restrict, and are intended to restrict, the method of competing in the Relevant Market, thereby restricting the number of competitors and causing prices in the Relevant Market to rise, maintain, or stabilize above competitive levels.

85.    Alternatively, these actions and omissions constitute a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, under the Rule of Reason; therefore, the Board and its members have violated the Federal Sherman Antitrust Act, 15 U.S.C. § 1.

86.    As a direct, proximate, and foreseeable result of Defendants' actions and omissions, their conduct (or lack thereof) has or will substantially affect interstate commerce or occur within the flow of interstate commerce.

87.    As a direct, proximate, and foreseeable result of the Board and its members' actions and omissions, Dr. Haentges and EFD have or will suffer damages and injury.

88.     Dr. Haentges and EFD seek treble damages and attorney's fees from the Defendants in their individual capacities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, respectfully request the Court enter judgment against the Defendants, jointly and severally, as follows:

1.  For actual, direct, incidental, and consequential damages according to proof

and in such amounts as will be proven at trial, as appropriate for each cause of

action alleged herein.

2.  For treble damages.

3.  For exemplary and punitive damages.

4.  For statutory damages.

5.  For pre- and post-judgment interest on all damages awarded, as permitted by

    law.

6.  For costs of suit.

7.  For attorney's fees as permitted by contract or law, including but not limited

    to 15 U.S.C. § 1021.5.

8.  For such other and further relief as the Court deems just and proper.


Respectfully submitted,


Dated:  April 14, 2025                   By:    */s/ David P. Heim*
                                                David P. Heim, Esquire
                                                John A. O'Connell, Esquire
                                                **BOCHETTO & LENTZ, P.C.**
                                                1524 Locust Street
                                                Philadelphia, PA 19102
                                                (215) 735-3900
                                                dheim@bochettoandlentz.com
                                                joconnell@bochettoandlentz.com
                                                *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

jury trial of twelve (12) on any and all claims or issues in this action so triable as of right.

Respectfully submitted,


Dated: April 14, 2025                     By:     */s/ David P. Heim*
                                               David P. Heim, Esquire
                                               John A. O'Connell, Esquire
                                               **BOCHETTO & LENTZ, P.C.**
                                               1524 Locust Street
                                               Philadelphia, PA 19102
                                               (215) 735-3900
                                               dheim@bochettoandlentz.com
                                               joconnell@bochettoandlentz.com
                                               *Attorneys for Plaintiffs*